**UNITED STATES of America**

v.

**George AGEE and Andrew Smith.**

**Crim. No. 76–389.**

United States District Court, E. D. Pennsylvania.

Nov. 22, 1977.

Bonnie B. Leadbetter, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Fern H. Schwaber, Defenders Ass'n of Philadelphia, Philadelphia, Pa., for Agee.

George Gershenfeld, Philadelphia, Pa., for Smith.

## OPINION

FOGEL, District Judge.

Defendants George Agee and Andrew Smith were convicted by a jury on February 23, 1977, of possession with intent to distribute a Schedule I narcotic controlled substance.[1] Each defendant has filed post-trial motions, and in the case of Andrew Smith, we heard argument on the motions and allowed supplemental briefing after the argument.[2] After carefully considering the matters raised by both defendants we concluded that their motions must be denied and entered orders to that effect. Those orders were then appealed to the Court of Appeals for this Circuit. We believe a statement of the reasons that led us to take the action we did is in order.

## I. GEORGE AGEE

Defendant Agee raised two contentions in his Motion for Judgment of Acquittal or, in the alternative, for a New Trial: *FIRST*, that the Court erred by denying his pretrial request for an order precluding any cross-examination of him on the question of his silence at the time of arrest; and *SECOND*, that his Fifth Amendment rights were violated by his cross-examination by counsel for co-defendant Smith concerning that silence at the time of arrest.[3]

### A. *Pretrial Evidentiary Rulings*

Just prior to the swearing of the jury which had been selected to try the matter, counsel for Agee requested a ruling as to whether cross-examination of Agee would be permitted with respect to his silence at the time of arrest. We refused to make such an evidentiary ruling in a vacuum, but advised counsel that we would entertain a request for a ruling during the

trial, should the issue become pertinent. Counsel asserts that our refusal to rule on this issue before trial was error, (1) because the law is absolutely clear that a defendant's silence at the time of arrest is not admissible, *cf., Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); and (2) because the very act of posing the question to the defendant, in front of a jury, as to a statement at the time of arrest, would be highly prejudicial to his defense. We disagree.

The crux of defendant's argument turns upon his interpretation of *Doyle* and *Hale.* If, as he argues, they lead to the unavoidable conclusion that a defendant's silence at the time of arrest is *never*, under *any* circumstance, admissible in a criminal trial, there would indeed be little reason for withholding a pretrial ruling on the matter. However, *Doyle* and *Hale* do not sweep so broadly. In both cases, the Supreme Court clearly limited its ruling to the particular facts before it. In *Doyle* the Court held that:

> the use for impeachment purposes of petitioners' silence, *at the time of arrest and after receiving Miranda warnings,* violated the Due Process Clause of the Fourteenth Amendment.

426 U.S. at 619, 96 S.Ct. at 2245 (emphasis added). The Court noted, however,

> [i]t goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest.

*Id.* at 619, n.11, 96 S.Ct. at 2245.

In *Hale* the Court held that probative value must be weighed against prejudicial

---

1. Agee was charged and convicted, on Count I of the indictment, of possessing with the intent to distribute, approximately 250 bags of heroin. Smith was charged and convicted, on Count II of the indictment, of possessing with the intent to distribute, approximately 251 bags of heroin.

2. Defendant Agee, through his counsel, waived oral argument on the post-trial motions.

3. Counsel also argues, in his Memorandum of Law supporting defendant's post-trial motions, that Smith's counsel improperly commented on Agee's post-arrest silence, during his closing argument to the jury. Since this argument is so closely related to the improper cross-examination argument, we will consider it as having been raised in the motion itself, even though it was not specifically set forth therein.

impact, and found that evidence of defendant's pretrial silence was inadmissible in light of the facts of that matter; defendant was a suspect and potential defendant at the time of the pretrial questioning, and had just been given his *Miranda* warnings. The court held that under the circumstances his failure to offer any explanation to the police could easily be attributed to his desire to assert his Fifth Amendment rights, rather than to his inability to explain his situation.

While we do not hold that *Doyle* and *Hale* are absolutely inapposite to the facts before us, it is certainly clear that the pertinence of these decisions depends upon the particular factual circumstances of a given case. Was the defendant a suspect at the time of his silence? Was the defendant being questioned by the police? Were *Miranda* warnings given? Could defendant's silence be construed as an attempt to invoke his Fifth Amendment rights? None of these questions can be adequately answered before the trial itself; we would be asked, in effect, to hypothesize a set of circumstances and rule, not on facts, but on that hypothesis. Not only was the refusal to rule appropriate on the record before us, but dictated under the circumstances, because we could not possibly have entered a meaningful ruling.

### B. *Improper Cross-Examination and Closing Argument*

During the cross-examination of defendant Agee, counsel for the co-defendant Smith asked the following question:

Q. Did you make any statement to the police at any time?

Agee responded, "No, sir." (N.T. 3.90). Counsel for Smith, during his summation, commented that

Mr. Agee's testimony was rather interesting and novel and I must say that I have been in this case since February of 1976 and this was the first time I heard that story.

(N.T. 3.130). Agee now asserts that the question and argument of Smith's counsel constituted an impermissible comment on his post-arrest under *Hale* and *Doyle, supra.*

■ With respect to the argument that the question was improper, *we note at the outset that no objection to the question by Smith's counsel was raised at any point during the trial. Nor did counsel's pretrial request for an evidentiary ruling (supra, part A) have the effect of preserving the issue, since we clearly and unequivocally advised counsel, at that time, that a timely request for a ruling during the trial would be considered.*[4] Thus, only plain error would justify the grant of a new trial. *United States v. Gross,* 511 F.2d 910 (3d Cir. 1975); *United States v. Somers,* 496 F.2d 723 (3d Cir. 1974).

■ Unlike the situation present in *Doyle* and *Hale,* Agee's contact with the police ended, rather than began with an arrest. Agee was not questioned by the police during this initial contact, was not a suspect, and hence, was not given any *Miranda* warnings. Thus, Agee's silence under these circumstances was not "insolubly ambiguous" as in *Doyle* and *Hale.* Had we been asked at an appropriate stage of the trial to rule on the question of the admissability of evidence of Agee's silence at the time of arrest, we might well have concluded, out of an abundance of caution, that such evidence should be barred. *However, we cannot and will not say, at this juncture, that it was plain error to allow the evidence to be heard, in the absence of any objection to it.*

---

4. Counsel asserts that he did not object to the question when it was asked because he felt that would have highlighted the question in the minds of the jurors. Assuming that this would otherwise excuse the failure to make any effort to preserve the issue, it does not explain why counsel could not have raised his objection at the close of direct examination, when the factual circumstances essential to an intelligent rul-

ing on the matter had been developed—surely if counsel could anticipate this issue arising before the trial even started, it would pose no problem for counsel to foresee the problem again at the outset of cross-examination, or indeed to request a sidebar conference at the time it was asked, a technique he used during the closing argument.

■ Agee's assertion concerning the comment of Smith's counsel during arguments raises a different problem. Counsel objected to the statement immediately after it was made, and we held a side bar conference then and there to resolve the matter. At that conference, counsel for Agee stated that his objection to the comment was based on the following points: (1) the date when Smith's attorney became involved in the case, and (2) it characterized Agee's version of the incident leading to the arrest as a "story" (N.T. 3.131). *Counsel for Agee never objected to the statement on the ground that it constituted a comment on Agee's silence at the time of arrest.* At the request of Agee's attorney, we gave the jury a cautionary instruction covering the two points which he did raise (N.T. 3.131–32). *No objection was ever made as to the adequacy or completeness of that instruction.* We therefore reject Agee's argument on this score as well.[5]

## II. ANDREW SMITH

Defendant Smith has filed a Motion for New Trial and/or Arrest of Judgment, in which he makes the ensuing arguments: FIRST, the jury verdict was contrary to the evidence; SECOND, the Court erred in denying defendant's Motion to Suppress physical evidence; THIRD, we were bound, under the doctrine of collateral estoppel, by a determination of the Philadelphia Court of Common Pleas which suppressed the same evidence; FOURTH, this Court was bound, at the very least, by the state Court's determination with respect to the credibility of witnesses who testified during the state court suppression hearings, although not before us; and FIFTH, that we erred in considering as part of the record on defendant's Motion to Suppress, matters which had not been made part of that record at defendant's hearing.

We consider these points seriatim.

### A. Sufficiency of the Evidence

■ Although defendant has not filed a Motion for Judgment of Acquittal (F.R. Crim.P. 29), his challenge to the sufficiency of the evidence should properly be raised by such a motion. We will therefore consider defendant's post-trial motions as having been filed under Rule 29. In reviewing such a motion we must view the evidence in a light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Greenlee,* 517 F.2d 899 (3d Cir.), cert. denied, 423 U.S. 985, 96 S.Ct. 391, 46 L.Ed.2d 301 (1975).

■ In this case, the evidence placed defendant in possession of 251 glassine packets of heroin, packaged in the way in which heroin is normally packaged for individual "street" sales, and valued at $2,008.00 (if sold individually). On that basis, the inference that the drugs held by defendant were intended to be sold by defendant is clearly reasonable. *See, United States v. Ortiz,* 445 F.2d 1100, 1104–5 (10th Cir.), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971). Thus the evidence in this case is more than sufficient to sustain the verdict rendered by the jury.

### B. Motion to Suppress

■ Defendant asserts that the seizure of evidence in this case violated his rights under the Fourth and Fourteenth Amendments. If the testimony of Officer Zagursky, at defendant's October 18, 1976 suppression hearing, is believed, the drugs which were found in defendant's automobile were observed by Officer Zagursky as he approached the defendant in his car during a routine traffic violation stop. Under *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968),

---

5. Even if counsel had properly raised his Fifth Amendment objection during the closing argument, it would not have formed the basis for granting a new trial. Counsel for Smith did not, during his closing, comment on Agee's failure to explain his version of the "incident" to the police—rather, he stated that *he,* personally, had not heard that version until the time of trial. Whatever else this comment might have done, *it did not infringe on Agee's Fifth Amendment rights.*

objects falling in the plain view of an officer who has a right to be in the position to have that view, are subject to seizure and may be introduced in evidence.

Since we found the testimony of Officer Zagursky to be credible (N.T., Jan. 31, 1977, p. 13), we were clearly justified in denying defendant's Motion to Suppress, unless the defendant prevails on his arguments raising collateral estoppel, or other related issues.

### C.   Collateral Estoppel

█ Defendants were originally arrested and charged by state officials in connection with the incidents involved in this case. At a suppression hearing held in the Court of Common Pleas for Philadelphia County, before the Honorable Bernard J. Goodheart, the evidence seized in this case was suppressed, because Judge Goodheart found that the testimony of the police officers concerning the manner in which the evidence was seized lacked credibility. Defendants were subsequently indicted by a federal grand jury and tried and convicted in this Court on charges arising out of the same incident. Smith now argues that Judge Goodheart's ruling at the state court suppression hearing should collaterally estop this Court from reaching a different conclusion with regard to the suppression issue. This contention simply does not hold water, and has been uniformly rejected by the Courts which have considered it. *See, Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *United States v. Magda,* 547 F.2d 756 (2d Cir. 1976); *United States v. Sifuentes,* 504 F.2d 845 (4th Cir. 1974); *Boyle v. United States,* 395 F.2d 413 (9th Cir. 1968), *cert. denied,* 393 U.S. 1089, 89 S.Ct. 861, 21 L.Ed.2d 782 (1969); *Ferina v. United States,* 340 F.2d 837 (8th Cir.), *cert. denied,* 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965).

### D.   Credibility Determinations on a Cold Record

Smith presses with more vigor, his contention that at the very least, this Court is bound by the state court credibility determination with respect to witnesses who testified before the state court, but not before this Court. This issue arises because, at the defendant's suppression hearing before this Court, the parties agreed, after taking the live testimony of one of the arresting officers, that the record of the state court suppression hearing could be incorporated by reference, thereby rendering unnecessary the testimony of the other arresting officer. Defendant now asserts that we are powerless to make an independent credibility determination, on a cold record, with respect to the testimony of Officer Wissman, the officer who did not testify at Smith's federal court suppression hearing.

Although it is not at all clear that defendant is correct in his contention,[6] we do not find it necessary to reach this issue, since, in any event, the testimony of Officer Wissman in the state court did not control our disposition of defendant's motion. Although defendants Smith and Agee were occupants of the same vehicle at the time it was stopped by the police, and the arresting officers, Zagursky and Wissman, were occupants of the same police vehicle at the time of the stop, the actual arrests of Smith and Agee took place separately, and at the various suppression hearings and trial, Officer Zagursky testified only with respect to defendant Smith, and Officer Wissman testified only with respect to defendant Agee. Thus, even assuming that we found Officer Wissman's testimony to lack credibility for the purposes of the Smith suppression motion,[7] our finding that Officer Zagursky's live testimony was credible was sufficient to support our denial of Smith's motion.

---

**6.** *Cf., Virgin Islands v. Gereau,* 502 F.2d 914 (3d Cir. 1974) (Directing the trial court to make *de novo* findings on the basis of a cold transcript of evidence presented to another judge, although permitting the trial court to order further live testimony if deemed necessary).

**7.** *It should be noted that this argument is not available to defendant Agee, since Officer Wissman did testify before this Court at Agee's suppression hearing, and Officer Zagursky's live testimony at the Smith suppression hearing before this Court was, by agreement, incorporated into the Agee record.*

E. *Scope of the Suppression Hearing Record*

Smith's final argument is that the Court erroneously expanded the record of the Smith suppression hearing to include matters which had been made part of the record in defendant Agee's suppression hearing.[8] Smith's suppression hearing was held on October 18, 1976. At that time, we heard live testimony from Officer Zagursky (the officer who arrested Smith), and, by stipulation, incorporated into the record the transcript of the state court suppression hearing which included the testimony of Officers Zagursky and Wissman. Agee's suppression hearing was held on January 18, 1977. At this hearing we heard the live testimony of Officer Wissman (Agee's arresting officer), and, by stipulation, incorporated into the record the transcript of the state court suppression hearing *and* preliminary hearing, each of which included the testimony of both officers, as well as the transcript of Smith's federal court suppression hearing, during which we heard the live testimony of Officer Zagursky.

On January 31, 1977, we rendered joint findings denying the pretrial motions of both defendants, and set the matter down for a joint trial on February 16, 1977.[9] Smith now contends that by rendering joint findings, based upon the records at both federal court suppression hearings, we committed prejudicial error, since Smith never consented to the broader incorporation which was stipulated to at the Agee hearing, when we considered, in addition to the matters before us at Smith's hearing, (1) the testimony of both officers at the state court preliminary hearing, and (2) the live testimony of Officer Wissman. While we agree with the defendant that there may have been technical error in considering, in connection with Smith's suppression motion, matters which were only made a part of the record at Agee's hearing, we do not agree that Smith was in any way prejudiced by this error.

FIRST: counsel for Smith was present at the state court preliminary hearing and fully cross-examined both officers at that time, and their testimony at that hearing was identical to their testimony on every other occasion. SECOND: although counsel for Smith did not have the opportunity to cross-examine Officer Wissman at Agee's suppression hearing (since he was not present at that hearing), Officer Wissman was made available to him for cross-examination at Smith's hearing, and in addition, was cross-examined by him at both the state court suppression hearing and preliminary hearing. THIRD: since the testimony of both officers did not vary from one hearing to the next, it is clear that had we rendered separate findings as to Smith, based solely on the record of that hearing, we would have reached the same conclusion. The addition of repetitious testimony which is only cumulative of testimony properly admitted into the Smith suppression hearing record, could not affect the outcome of Smith's motion, and at the very most, would be harmless error. *Cf., Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) (erroneous admission of confession of co-defendant harmless, where defendant's own statement, which was properly admitted, was completely consistent with the erroneously admitted statement).

In any event, however, we have carefully reviewed the record of Smith's suppression hearing once again, independent of the Agee suppression hearing record, and are firmly convinced, based upon the Smith rec-

---

**8.** Separate suppression hearings for Smith and Agee resulted from the fact that the authorities were unable to locate Agee for a period of time. We were obliged to proceed with Smith's case, and therefore held a suppression hearing on his pretrial motion. When Agee was later located, we then held a separate suppression hearing with respect to his motions.

**9.** Our desire was to get both defendants on the same track as soon as possible, to avoid further cost, inconvenience and consumption of time caused by duplication of hearings and trial. Neither defendant, at any time, requested severance, and, in any event, none of the factors warranting severance are present in this case. *Cf., United States v. Dansker,* 537 F.2d 40 (3d Cir. 1976).

ord alone, that we would not deviate one iota from the findings which we rendered with respect to Smith's pretrial motion on January 31, 1977.

### III. CONCLUSION

For the foregoing reasons, we concluded that the post-trial motions of George Agee and Andrew Smith must be denied.[10]

---

**10.** We denied defendants' post-trial motions by Order dated May 19, 1977, in order to expedite their appeals, noting in the Order that an Opinion would follow. There is, therefore, no Order accompanying this Opinion.